Madam Chair, members of the panel, my name is Rob Ferris-Olson. I'm here on behalf of my client, John Philip Meyer. I'd like to reserve two minutes for rebuttal, please. Madam Chief, this case is fairly straightforward. It's about how UnitedHealthcare misled and concealed that it was charging Mr. Meyer and providers out-of-state rates or paying providers out-of-network rates at an in-network facility. The District Court determined that these allegations were not sufficient to rise to the level of a breach of fiduciary duty, and that in any case, his claims were time-barred under the relevant statute of limitations. Both of these opinions are incorrect and will be addressed in turn. First, with respect to the fiduciary, in order to bring a fiduciary claim under ERISA, you have to allege three things. First, that there's a fiduciary. Second, that there's a breach of fiduciary duty. And third, that there are damages. Can I ask you, when did Mr. Meyer get his plan information, including his policy, from United? Your Honor, I don't remember specifically, but I know this was part of the issue in the 2017 case, is that he was not receiving those policies, and so he had to sue to obtain those. So I know he received them as part of the resolution of that lawsuit, which was probably sometime late in 2017. However, those policies do not describe who's in-network and who's out-of-network, and that's the main factual allegation here, that just to jump ahead and get to the statute of limitations, Mr. Meyer didn't know until 2019 that community medical was actually an in-network provider, and those policies don't identify who's in-network. But when did he learn that his plan was an ERISA plan? That would have been sometime after 2017, because I think as the complaint alleges, Mr. Meyer first filed the ERISA claim to get those documents from United. United said, well, this isn't an ERISA plan, and so Mr. Meyer dismissed that case, and then he brought the 2018 case alleging state law claims under Unfair Trade Practices Act. Those claims were then dismissed by the district court in 2020, and that dismissal was upheld by this court in 2021. So arguably, it wasn't until March of 2021 that he was aware this was an ERISA plan, because as Judge Christensen said in the 2018 case, United mischaracterized it as a non-ERISA plan back in 2017. So as far as the fiduciary claims, Judge Christensen didn't address whether United was a fiduciary, but in their response... Sorry to interrupt again, but why wouldn't he have known by May 2, 2019 when United moved for judgment on the pleadings that this was an ERISA plan? Why did it take until March of 2021? Simply because that's when this he still filed his complaint within the three-year statute of limitations by December 10, 2021. So as far as the fiduciary goes, United claims it's not a fiduciary, though Judge Christensen didn't address it. I think that's pretty clearly an erroneous conclusion based on the Supreme Court's precedent in Aetna v. Davila, this court's precedent in Kyle Railways and Baffran. And so to the extent there's any question there of fiduciary, they are because they exercised discretion over the claims in this plan. I think their policies even give them the ability to interpret the benefits. This is on page of the supplemental excerpts of record 296 and 488. I guess I'm curious to hear from you what cases support your assertion that failure, because you have a number of claims, a failure to maintain accurate records, for example, what's your best case that supports your assertion that that constitutes a breach of fiduciary duty under ERISA? Your Honor, Massachusetts Mutual Life discusses that there are statutory obligations to keep records. And I think that failing to maintain those records also creates a question of fact as far as whether they breached that fiduciary duty of due care or of managing the plan for the benefit of the participants and beneficiaries. Because if you have those records, for example, you never know how much you've paid on behalf of a specific participant or beneficiary. You don't know the status of the plan itself. And so it gives rise to those breaches. It's kind of the underlying thing you have to do. And if you don't do it, you never know if you're managing the plan correctly or you're fulfilling your fiduciary obligations to the participants, both through due care, diligence, prudence, skill, and just managing it correctly. It seems like your emphasis on Massachusetts may be misplaced because, and the quote, I'm not sure is the accurate one that you put it in your brief. It seems like Massachusetts is a case about whether a beneficiary can be awarded extra contractual or punitive damages caused by improper or untimely processing of disability benefit claims under ERISA. And it seems like you pulled the language from a hypothetical scenario offered by the Supreme Court. So I was just seeing if there was anything else you had besides that Massachusetts case. Your Honor, you described that accurately. I think I believe it was the Verity case also discusses that requirement of maintaining records. But I think even if there's not a specific case on point, I think the analogy that if you don't know what's in the records, how can you adequately manage a plan provides enough information and allegations at this pleading stage to survive a motion to dismiss. And if the court looks at those cases that dismiss cases for fiduciary reasons, almost all of them are at the summary judgment stage where there's been fact finding. Because certainly I think we should be and my client should be entitled, we should be entitled to put on evidence from an expert or from some insurance provider that that is a duty that they undertake to make sure that they're exercising prudence, care, skill, that of a prudent man. In your opening brief, it looks like you argue that the claims do not arise under the No Surprises Act. If that's true, then I'm trying to figure out what is the legal basis either in statute or case law for the assertion that surprise billing is a breach of fiduciary duty? Your Honor, I think there are two cases that somewhat address that. They're the Barker case and the Gunther case, both of which say a fiduciary has an obligation not to misrepresent claims to borrowers or not to miscommunicate with clients. And then you can look to the Massachusetts Mutual case, which just talks about willful and systematic misclassification of benefits can create, can result in a breach of fiduciary duty. And so I think those are the main cases. But also with respect to the No Surprises Act, you're correct. There is no under the No Surprises Act. But I think it provides evidence that this type of action would breach those fiduciary duties. And that's why we implemented a law six years after this happened to prevent the exact kind of thing that happened here. It sounds like you're not really alleging a breach of fiduciary duty. You're really just wanting recovery of the benefits and kind of dressing it as a fiduciary duty claim. Your Honor, and I understand United made that argument as well. I think it's a kind of a combination of both. I think there certainly was the denial of benefits. And I think the first request for relief asked for payment of those benefits. But I think there's also the breach of fiduciary duty in the larger sense of concealing that Missoula community, for example, was an in-network provider and then requiring and then not paying providers the correct rates and then billing my client for those extra rates. And so it's broad. So if it's both, then separate from the breach of fiduciary duty, we'd have to look at state law for the statute of limitations on the denial of recovery of benefits. So what state law would we look to for that? Your Honor, I believe that would be our Unfair Trade Practices Act. Obviously, that's not in the briefing. And so I'm not completely aware of it. But my understanding is that that statute of limitations for a claims denial or for an unfair trade practice is two years. Okay. And I'm just trying to figure out where all the administrative remedies exhausted here that Mr. Meier could have taken advantage of. Your Honor, as we've alleged in the in the pleadings, he exhausted his administrative remedies by working with United to try and resolve those claims issues with for the Billings Clinic issues. And so no one has brought that up yet. And so there's not enough in the record to determine whether he has exhausted those records. The district court denied this on summary judgment and based on no alleged no sufficient allegations of a breach of fiduciary duty. I also wanted to jump back to the previous question about the two-year statute of limitations. I think even if that applied for the claims benefit, there's still the three-year statute of limitations that applies to the claim under 1132A3 for the equitable relief of the surcharge and reformation of the contract. And did you want to reserve the balance of your time with that? Thank you, Your Honor. Chief Judge McGeehan, may it please the court. Callie Castillo and Aaron Wilson for United complaint with prejudice. Did you correctly dismiss the suit when it was originally filed in district court? Yes, Your Honor. In fact, the the dismissal that first dismissal is critical to the fact why his claims are actually barred by the statute of limitations, because this court has held that dismissal without prejudice does not toll any statute of limitations. So the only. But my question really is, did that case belong in federal court? Because it seems to me that it did. And the district court made a mistake in dismissing it. Your Honor, I think there's a bit of confusion about the there's three different complaints. So the first complaint was filed in July of 2017, in which he alleged that UnitedHealthcare had failed to provide requested information regarding the benefits. That claim was voluntary dismissed. The second. That's because United represented this was not an ERISA plan, which turns out not to be true. Right. And why didn't you give him the information? I mean, the only reason he filed that lawsuit was to get the information, including his own plan documents. And under ERISA, you're required to provide those in 30 days. So he requested that information in February of 2017. And we know from United's email, August 14, 2017, six months later, you still haven't provided the information because your email says I'll talk with your attorney to address your request for member records. So why is that? And we'll first answer that and I have more follow up. Your Honor, on this record, the reason for the misstatement is not in the record. But what's critical then, when did United learn that Mr. Meyer had an ERISA plan? So the policy itself actually references that it is an ERISA policy. And I'd like this court to turn to. Which then means that they knew from the outset. Yes. It's their own policy. But we're not asserting the fact that the first complaint, which he voluntarily dismissed, wasn't resolved. And there's no allegation that it wasn't resolved because, in fact, United Health Care did. But I think I'm right then, that your client made a mistake in representing to the district court that this was not an ERISA plan. Is that correct? For the very first time, there was a mistake in that record. But this mistake in that record, a mistake by your client. Yes, Your Honor. A misrepresentation by your client. It was a mistake, but I just said misrepresentation. Was it also misrepresentation to the court? No, Your Honor. Your client did not represent to the court that this wasn't an ERISA plan. Not to my knowledge. What was represented is the very first one is that in there was a mistake that United Health, in the very first case that was brought, that United Health Care represented to Mr. Meyer that this was not an ERISA case. So it did misrepresent then? There was a mistake. Yes, Your Honor. That was voluntarily dismissed. You don't like the word misrepresent? Well, I don't like it, Your Honor, because the fact of the matter is we're on the third complaint and there's been adjudications. So tell me, when did you disclose to Mr. Meyer this misstatement? From the first case? Yes. So your August 14th letter saying, our records reflect that Mr. Meyer is in a small group non-ERISA plan. And if you don't dismiss this case, we're going to seek attorney's fees because this is a non-ERISA status case. So when did you correct that mistake? It would have been corrected by August of 2017 in which Mr. Meyer and United Health Care had, United Health Care provided those records and they had the sit down to go over his claims that he had been mis-billed. But critically, the policy itself always stated that it was an ERISA. And again- So you threatened attorney's fees without checking his policy? Because that's what this August 14th, 2017 email does. It says, if you don't dismiss this lawsuit, we're going to seek attorney's fees because this is a non-ERISA case. So you didn't check the policy before you make that type of a threat to a pro se litigant? I apologize, Your Honor. That piece of that case is not in this record. Your email is in the record? Yes, Your Honor. But at the end of the day, that first case was resolved in which United Health Care fixed the issue with respect to providing the records and going over with him. The second case- No, it looks like that was only done after he dismissed the lawsuit based on your representation that he did not have an ERISA plan. And Your Honor, there was an agreement. This court has stricken it from the record and on UnitedHealthcare's motion, but there was a tolling agreement to settle that issue. So the fact that this, that very first action- Okay, you just asked us to deny his motion for judicial notice of that tolling agreement, and now you want to use it and introduce it in the- Your Honor, I apologize. I don't know how to answer your question because you've asked this question. It has to be affected because of the fact of the matter is that very first lawsuit was resolved. Based upon a misrepresentation by your client. But he had an opportunity to then bring a second case in 2018 in which he alleged the Montana Unfair Practices Trade Act was resolved. That case was also dismissed and this court affirmed it. We are now talking about the third iteration of lawsuits. And at the very end of the day- What bothers me about this case is that you've been jerking this guy around, get delay, delay after delay, many of the delays caused by the behavior of your client. And you now say, whoops, statute of limitations. That does not seem fair to me. Does it seem fair to you? Your Honor, I fully understand that Mr. Meyer is very frustrated- I asked the question, does that seem fair to you? It does. Because at the end of the day, Mr. Meyer, who is an attorney, did file his claims and brought these when he had opportunities to do so earlier. We are on the third iteration of a different complaint. That is the record that is before this court. But even if we set aside the statute of limitations issues with respect to, which don't really have any bearing on the first and the second lawsuit, because this court has said that it's the issue of when the facts came before him of whether there was a billing issue. And the record is undeniably clear that he knew that information in 2016, generously in February of 2017, when he requested and received those records from UnitedHealthcare. And also in 2018, when he received the last bill. But setting aside the statute of limitations- So can we just, I just look at, you're saying, let's just look at the record. So let's look at the record. We have the August 14th email that I've already discussed. Then we have the unopposed motion to dismiss the first lawsuit. And it says the parties need more time to exchange information. Correct? So then the next, the only place I can see in the record where the fact that this is an ERISA claims comes up is the May 2nd, 2019 United judgment on the pleadings motion that says now ERISA preemption. So that's all I see in the record. And so it does appear that there's this window of time between August 14, 2017, where United basically pressures Mr. Meyer, dismiss your case, or we're going to sue you for attorney's fees, because this is not an ERISA case. And the first time I see in the record, United say, oh, wait a minute, this is an ERISA case, is almost two years later. If that's the record, your honor, but this court need not even address the statute of limitations because at the end of the day, Mr. Meyer has not brought a claim for breach of fiduciary duty. The pleading standard that he has raised is that his naked assertions is that there's this systematic design to deny him network benefits, but that doesn't meet the Iqbal Twombly standard. His claims are nothing more than broad conclusions. But if you actually look at the underlying claims, which are found at ER 103, he alleges no facts that there was a failure to maintain correct records. There's no logical link that UnitedHealthcare somehow failed to pay service providers for all in network claims provided, or that it facilitated this surprise billing scheme by allowing in network and out of network providers. At the end of the day, his policy, which he had as in July of 2017, plainly states that the matter of in network and out of network is a matter of contract. The fact that he mistakenly believes now that the Billings Clinic, or excuse me, the Missouri Clinic should have been an in network provider doesn't change the fact that as a matter of contract, it was not. And there's no reason for that to then be put on UnitedHealthcare as some sort of breach of fiduciary- When did UnitedHealthcare give the policy documents to Mr. Meyer? What's the date? I believe, Your Honor, it was in the end of 2017. What time? Around the time of the unopposed motion to dismiss, December 4th, 2017? No, Your Honor, it would have been after that. Did you say after that? Did you say, I'm sorry. Was it before or after the filing of the unopposed motion to dismiss without prejudice on December 4th of 2017? I believe it was before because they met in person in 2017. Excuse me for the hour. I don't want believe. Do you not have the record of when did you provide the policy information, which under ERISA, you would have had to do within 30 days of his request on February 1st of 2017? When was it provided? Your Honor, right at this moment in time, I don't have the exact day. Can I ask you- I believe it is. Sorry, I apologize. Go ahead, Finis. I believe it was July of 2017 based on my notes. I just do not have the exact date. Okay, well, no, it can't be because the August 14th email says, I would like to work with Mr. Meyer's attorney to address his request for member records. That's the United email, August 14, 2017. That is not consistent with we've already provided you the medical records. This says, I want to work with your attorney to provide you your records. So I think the July 27th date doesn't make sense to me. So if I'm wrong about that, at the end of the day, he did receive those policies. He did receive all of the claims provided. And his claim for breach does not address that issue, Your Honor, that you're raising here with respect to the provision of records. And I apologize. Yeah, I just want to ask you because your time is up on administrative remedies. Were there administrative remedies and were they exhausted? There were administrative remedies available to him. If he believed that a claim should have been paid, there was a process that is set forth in the policy at two SCR 279 to 288 and three SCR 472 to 81. There's no exhaustion requirement for a breach of fiduciary duty claim, right? Correct. Because that would be futile. If someone is breaching their fiduciary duty to you, it doesn't make sense to make them now go back to that breacher's internal grievance process. So there was no exhaustion requirement for that. There's only exhaustion requirement if he's bringing a denial of benefits claim, right? You agree with that? I do agree. And at the end of the day, what he's asserting is a denial of benefits claim because he asserts that this clinic should have been in network care and should have been billed at in network rates. But when, in fact, it was an out of network provider, and that is not put on UnitedHealthcare because that is a matter of contract. Thank you. We ask that you affirm. Madam Chief, once again, I'm Rob Ferris Olson. Thank you for your time today. I did want to point out a couple of things that I heard come out of the last discussion. First, this is the third time this case has been raised because of the misrepresentations and mistakes by United, not because of my client's neglect. He has been diligently litigating this case for six years, and it's time that it finally gets heard. Second of all, with respect to the statute of limitations, the threshold is a little bit different than I think it was described. Yes, he may have had the benefit. He may have gotten those documents, the policy documents in 2017 or more likely 2018 when those discussions happened. But in order for the statute of limitations for a breach of fiduciary duty to be triggered, you have to have the alleged breach and then actual knowledge. And that actual knowledge of the alleged breach is more than just receiving documents. I think the Supreme Court in the Selima basically said you have to know and understand that those documents demonstrate a breach of that fiduciary duty. Mr. Meyer didn't know about that until his April 2019 meeting with Judge Christensen. And so to the extent there's any issue with statute of limitations, I think that was the breach. But why wouldn't him receiving bills exceeding his deductible not put him on notice? It would put him on notice, Your Honor, that that provider was non-network. And so the problem with that is that Missoula Community was actually an in-network facility. And so as long as he assumed, and that was incorrect, but as long as he assumed because he didn't have the knowledge that Missoula Community was an out-of-network facility, then there's nothing wrong with those bills. Had it turned out to be an out-of-network facility, then those bills probably would have been correct. But what he found out in 2019 was in fact it was an in-network facility, and so those bills were inaccurate. And as he alleges throughout the complaint, at all times United knew that Missoula Community was an in-network facility and refused to treat it as such, and instead billed it as out-of-network facility and refused to follow its fiduciary obligations. Thank you, Your Honor, unless there are more questions. Thank you. Mr. Farris-Olson, Ms. Castillo, thank you for your oral argument presentation. The case of John Philip Meyer v. United Healthcare Insurance Company is now submitted.
judges: MURGUIA, FLETCHER, KOH